UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Dynamic Systems, Inc.,

        Plaintiff,

  -against-

Skanska USA Building, Inc., West-Fair Electric
Contractors. Inc., Sentrale Construction Corp., and
A-Z Fire Alarm Security, Inc.,

        Defendants.
----------------------------------------------------------------X
Skanska USA Building, Inc.,

        Third-Party Plaintiff,

  -against-

Westchester County Health Care Corporation,

        Third-Party Defendant.
----------------------------------------------------------------X
Westchester County Health Care Corporation,

        Fourth-Party Plaintiff,

  -against-

Perkins Eastman Architects, D.P.C.,

        Fourth-Party Defendant.
----------------------------------------------------------------X
Perkins Eastman Architects, D.P.C.,

        Fifth-Party Plaintiff,

  -against-

John Smolen & Associates, LLC, John Smolen,
Bard, Rao & Athanas Consulting Engineers, P.C.,
a/k/a BR+A Engineers, and Mazzetti, Inc., a/k/a
Mazzetti + GBA,

        Fifth-Party Defendants.
---------------------------------------------------------------- X

**DECISION AND ORDER**

19 Civ. 10237 (NSR) (AEK)

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

Fourth-Party Defendant Perkins Eastman Architects, D.P.C. ("PEA") filed a motion to compel non-party witness Todd Klair to answer certain questions posed to him by counsel for PEA during Klair's deposition.  ECF No. 236.  Fourth-Party Plaintiff Westchester County Health Care Corporation ("WCHCC") maintains that Klair need not answer the particular questions at issue because the common interest doctrine protects from disclosure communications that Klair had with WCHCC's counsel in preparation for his deposition.  ECF Nos. 245, 262.  For the reasons that follow, PEA's motion to compel is DENIED.

## BACKGROUND

On April 1, 2016 CBRE, Inc. ("CBRE") and Westchester Medical Center ("WMC") entered into a contract whereby CBRE agreed to serve as the Project Manager for WMC in connection with the construction of an ambulatory care pavilion at WMC's campus in Valhalla, New York (the "Project").  *See* ECF No. 236-3 ("Project Management Agreement").[1]  Pursuant to the Project Management Agreement, Klair was assigned to be the Project Executive.  *See id.* Schedule A ("Scope of Services").  It was agreed that CBRE would be involved in all phases of the Project from preconstruction through close-out, with specific tasks and responsibilities spelled out in the Scope of Services.  *See generally id.*

The instant litigation was commenced on November 4, 2019, when Plaintiff Dynamic Systems, Inc., a subcontractor on the Project, sued Skanska USA Building, Inc. ("Skanska"), the general contractor for the Project, seeking to recover damages for additional costs incurred as a

---

[1] The parties refer to WCHCC and WMC interchangeably, particularly in the context of the Project Management Agreement.  WCHCC admits that it was the owner of the Project, which was an expansion of the WMC campus.  *See, e.g.*, ECF No. 195 (WCHCC's Answer to Skanska's Supplemental Third-Party Complaint) ¶ 5.  For consistency, the Court will only refer to WCHCC—the actual named party in this litigation—for the remainder of this Decision and Order.

result of multiple change orders amending the scope of work under its subcontract with Skanska. ECF No. 1.  WCHCC initially was brought into the litigation when Skanska served WCHCC with a Third-Party Complaint on July 30, 2020; that pleading alleged, among other things, that WCHCC provided Skanska with deficient design documents, which, according to Skanska, caused Skanska to incur additional costs and suffer damages.  ECF Nos. 16, 19.  WCHCC subsequently filed a Fourth-Party Complaint against PEA, which WCHCC had retained to provide architectural and engineering services in connection with the Project; WCHCC asserted claims against PEA for professional malpractice, breach of contract, contractual and common law indemnification, and contribution.  ECF No. 26.  CBRE is not, and has never been, a party to the litigation.

As part of discovery, WCHCC subpoenaed Klair for a deposition, which took place on May 5, 2023.  During the deposition, counsel for PEA sought to question Klair about discussions that Klair had with WCHCC's counsel during a meeting held in December 2022, which was attended by Klair, CBRE's outside and in-house counsel, and WCHCC's counsel.  *See* ECF No. 236, Ex. B ("Klair Dep.") at 202-08; ECF No. 245 at 2.  WCHCC's counsel objected to this line of questioning and directed Klair not to answer.  Klair Dep. at 203, 205, 206.  The basis for the objection was the common interest agreement between CBRE and WCHCC.  *Id.* at 203 ("[T]here is a common interest agreement between CBRE and [WCHCC] and I'm going to instruct the witness not to answer any questions about things that he and I talked about in presence of Mr. Major [CBRE's outside counsel].").  PEA filed the instant motion to compel Klair to answer these questions.

ANALYSIS

I.     **Legal Standard**

"Although communications between client and counsel relating to legal advice are generally privileged, the privilege is waived where such communications are 'made . . . in the known presence of a third party.'" *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009) (quoting *People v. Osorio*, 75 N.Y.2d 80, 84 (1989)).[2] "The common interest doctrine is an exception to the general rule that voluntary disclosure of confidential, privileged material to a third party waives any applicable privilege." *Id.* at 71 (quotation marks omitted). "The doctrine precludes a waiver of the underlying privilege concerning confidential communications between the parties made in the course of an ongoing common enterprise and intended to further the enterprise . . . ." *Id.* (quotation marks omitted). "The common interest doctrine is not an independent source of privilege or confidentiality." *Hayden v. Int'l Bus. Machines Corp.*, No. 21-cv-2485 (VB) (JCM), 2023 WL 4622914, at *7 (S.D.N.Y. July 14, 2023) (quotation marks omitted). "[T]he communication itself must, in the first instance, be protected by the attorney-client privilege or the work product doctrine, for the common interest doctrine to apply." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19-cv-9193 (PGG) (SLC), 2023 WL 315072, at *7-8 (S.D.N.Y. Jan. 19, 2023).

The party invoking the common interest doctrine "bears the burden of demonstrating that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy." *Monterey Bay*

---

[2] Where, as in this case, the basis for subject matter jurisdiction is diversity of citizenship, "state law provides the rule of decision." *HSH Nordbank AG New York Branch*, 259 F.R.D. at 70 n.6 (citing Fed. R. Evid. 501). New York privilege law therefore applies to this dispute, but as courts have noted, "the New York law of attorney-client privilege is, with certain exceptions, substantially similar to the federal doctrine." *See id.*

4

*Mil. Hous., LLC*, 2023 WL 315072, at *8 (cleaned up).  While "[s]ome case law suggests that a party seeking to invoke the common interest doctrine must have an 'identical' legal interest[,] . . . more recent cases have held that the parties need not have total identity of interest as long as a limited common purpose necessitates disclosure to certain parties." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, No. 13-cv-8997 (JPO) (GWG), 2015 WL 3450045, at *3 (S.D.N.Y. May 28, 2015) (quotation marks omitted); *see also Guiffre v. Maxwell*, No. 15-cv-7433 (RWS), 2016 WL 1756918, at *6 (S.D.N.Y. May 2, 2016) ("A limited common purpose necessitating disclosure is sufficient, and a total identity of interest among the participants is not required under New York law.") (quotation marks omitted).  Moreover, "a non-party to the litigation can join a joint defense agreement, receive all of the benefit inured under such agreement, and be obligated to the same degree as the co-parties." *Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003).

## II.    Application of the Legal Standard

At issue in this motion is whether PEA's counsel may question Klair about the substance of his communications with WCHCC's counsel at the December 2022 meeting.

### A.    Common Legal Interest

With respect to the first element of the two-part test governing the common interest doctrine, WCHCC asserts that it possesses a common legal interest with CBRE based on CBRE's role as Project Manager and CBRE's potential liability in this lawsuit.  Anthony Costello, WCHCC's Executive Vice President and Chief Operating Officer, explained in an affidavit that

> [i]n the course of the Project, substantial problems arose because of defects discovered in the design team's drawings, which were overseen by the Project's architect, PEA.  As the delays grew longer and PEA and its design team members were unable to remedy the problems in a timely fashion, WCHCC attorneys became increasingly involved in discussions about potential liability and potential legal action necessary to remedy the

5

> wrongs that occurred in connection with the Project.  During this period of time, when WCHCC had its lawyers engaged in discussions with employees and other parties intimately involved with the Project, CBRE representatives were involved in discussions and other communications with WCHCC attorneys, including principally CBRE's Director of Project Management for Healthcare, Mr. Klair.

ECF No. 262-1 ("Costello Aff.") ¶ 4.  According to Costello, after this action was filed, "it became clear that PEA was adverse not only to WCHCC, but that PEA would also potentially assert claims against CBRE."  Id. ¶ 6.  Even though CBRE never became a party in this proceeding, in PEA's answer to WCHCC's Fourth-Party Complaint, PEA asserted as an affirmative defense that WCHCC's claims against PEA were "barred in whole or in part" because the alleged damages sustained by WCHCC "were caused, in whole or in part, by the culpable conduct, carelessness, recklessness, negligence or wrongdoing" of WCHCC and CBRE, among others.  See ECF No. 34(PEA's Answer) ¶ 32; see also Costello Aff. ¶ 6 & Ex. A.  PEA separately asserted, as another affirmative defense, that WCHCC "failed to perform and/or failed to require" CBRE, among others, "to perform the obligations . . . required by them under their agreements with WCHCC," the proper performance of which was a condition to PEA's performance.  ECF No. 34 ¶ 33.  These same affirmative defenses were included in PEA's December 2022 answer to WCHCC's Supplemental Fourth Party Complaint.  See ECF No. 201 ¶¶ 36-37.

    CBRE's potential exposure and/or potential for involvement in this lawsuit led it to retain outside counsel—Meister Seelig & Fein PLLC—"to assist it in defending threatened and any actual claims asserted by PEA."  Costello Aff. ¶ 7.  According to Costello, since WCHCC and CBRE knew they would "continue to work together in a commonly aligned defensive position against PEA and other members of the design team," they, and their respective lawyers, determined that they should "formally confirm their understanding that they would continue to work together, now using two separate sets of lawyers, while aligned in interest against common

adversaries." *Id.* ¶ 8. Accordingly, to ensure that they and their respective lawyers could keep their communications confidential, WCHCC and CBRE executed a formal common interest agreement in February 2022. *Id.* ¶ 8 & Ex. B (the "Agreement").[3]

The preamble to the Agreement notes that CBRE and its employees have not been named in this lawsuit, but recognizes that they "were involved in the underlying Project and have knowledge of the background facts and expertise related thereto." Agreement at 1. It goes on to state that WCHCC and CBRE "have certain substantially similar interests and recognize certain mutually beneficial activities might be undertaken with regard to WCHCC's response and defense to allegations that have been, or may be, asserted against WCHCC relating to the Project, and/or affirmative claims that WCHCC has asserted or may assert against parties other than CBRE relating to the Project." *Id.* CBRE's role in the Project—managing the progress of the Project on WCHCC's behalf through all phases from preconstruction through close-out, *see generally* Scope of Services—and the acknowledged difficulties that arose during the course of the Project, make manifest that CBRE and WCHCC have a common legal interest in any litigation brought by any of the contractors or subcontractors who worked on the Project. Moreover, the Agreement evidences the intent of CBRE and WCHCC to engage in "actual cooperation toward a common legal goal." *Monterey Bay Mil. Hous., LLC*, 2023 WL 315072, at *8 (quotation marks omitted). Accordingly, WCHCC has established that WCHCC and CBRE had a common legal interest, and not merely a commercial objective, in entering into the Agreement; this is sufficient to satisfy the first element of the two-part test governing the assertion of the common interest doctrine.

---

[3] While it is not always necessary for common interest agreements to be in writing, see *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004), "[i]t is obviously prudent nonetheless to have a joint defense memorialized in writing," *Lugosch*, 219 F.R.D. at 237.

### B.     Disclosures Made While Formulating Common Legal Strategy

WCHCC also has demonstrated that the communications between WCHCC's counsel and Klair at the December 2022 meeting were made in furtherance of formulating a common legal strategy.  The Agreement contemplates that WCHCC and CBRE "may strategize, share documents and engage in communications," which it defines as "Covered Material," "that will be protected under any and all existing attorney client privilege and work product doctrines, the common interest doctrine, and all other applicable privileges, protections or doctrines (collectively the 'Privileges'), such that disclosure of documents or communications between the Parties, including, but not limited to communications and document disclosure with CBRE employee Todd Klair while in the course of his employment with CBRE or otherwise, shall not be deemed a waiver of such Privileges." *Id.* at 1.  The Agreement then provides that "[t]o further their common interests," WCHCC and CBRE and their counsel "may, but are not obligated to, exchange Covered Material orally, electronically, and in written form," and that WCHCC and CBRE "would not disclose to each other such Covered Material but for their mutual and common interests related to [this] Lawsuit and but for the undertakings in this Agreement." *Id.* § 1.

The communications concerning the Project during Klair's December 2022 meeting with both CBRE's and WCHCC's counsel fall squarely within the Agreement, and are therefore within the protections afforded by the common interest doctrine.  According to Costello, WCHCC's counsel met with Klair in December 2022 at Meister Seelig's offices and interviewed Klair for two to three hours in order to ascertain his "recollections and opinions" regarding the

Project.  Costello Aff. ¶ 9.[4]  The communications during this meeting—which was held in connection with discovery in this litigation and in anticipation of Klair's deposition—were thus in furtherance of WCHCC's and CBRE's development of a common legal strategy with respect to the lawsuit.

WCHCC has satisfied both parts of the two-part test and met its burden of demonstrating that the discussions that took place during Klair's December 2022 meeting with WCHCC's counsel are protected from disclosure by the common interest doctrine.

## CONCLUSION

For the foregoing reasons, PEA's motion to compel, ECF No. 236, is DENIED.

As previously ordered by the Court, PEA may further depose Klair for an additional three hours, *see* ECF No. 258, but PEA is precluded from questioning Klair regarding his communications with WCHCC's counsel during the December 2022 meeting.  In addition, in accordance with the prior order, if, upon completion of the additional three hours of questioning, any party believes that still more time is needed to depose Klair, then that party may make an application to the Court pursuant to Rule 30(d)(1) of the Federal Rules of Civil Procedure, no later than one week after the resumed deposition is finished.  *Id.*  Such application must include a

---

[4] In its letter in opposition to the motion, WCHCC described the December 2022 meeting as follows:

> Pursuant to the [common interest agreement] and in preparation for the deposition phase of this action, on December 14, 2022, WCHCC's attorneys from Venable LLP, Matthew McLaughlin, Gary Rubin, and Michael Guerra, interviewed Mr. Klair at the offices of Meister Seelig & Fein LLP in Stamford.  Meister Seelig serves as outside counsel to CBRE. A partner at Meister Seelig, Christopher Major, represented CBRE and Mr. Klair at the interview.  Also present for the interview by telephone was an in-house CBRE attorney, Anna Waller.  The meeting lasted approximately 2.5 hours.

ECF No. 245 at 2.

copy of the entire Klair deposition transcript so that the Court can evaluate whether the additional time is "needed to fairly examine the deponent" and whether "the deponent, another person, or any other circumstances impede[d] or delay[ed] the examination." Fed. R. Civ. P. 30(d)(1).

By no later than December 8, 2023, the parties must submit a status report to the Court via ECF regarding the scheduling of any further deposition of Klair, and any other outstanding discovery issues.[5]

Dated: November 22, 2023
White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

---

[5] The Court recognizes that because of the delay in resolving this motion, certain limited adjustments to the discovery schedule will be required to allow for the Klair deposition to be completed.